**Opinion issued May 30, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-01115-CV

————————————

**THE BOARD OF TRUSTEES OF THE GALVESTON WHARVES,**
**Appellant**

**V.**

**E.L. O'ROURKE, Appellee**

**On Appeal from the County Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Case No. 61873**

# O P I N I O N

In this interlocutory appeal, E.L. "Ted" O'Rourke sued the Board of

Trustees of the Galveston Wharves ("the Wharves") for invasion of privacy and

civil conspiracy, and O'Rourke also asserted claims for declaratory and injunctive relief and sought compensatory and punitive damages. The Wharves filed a plea to the jurisdiction, asserting that O'Rourke's claims against it were barred by sovereign immunity. The trial court denied the Wharves' plea to the jurisdiction. In four issues, the Wharves contend that the trial court erred in denying its plea because (1) O'Rourke failed to provide pre-suit notice of the claims pursuant to the Texas Tort Claims Act ("TTCA" or "Tort Claims Act"); (2) sovereign immunity bars O'Rourke's intentional tort claims; (3) the trial court lacks jurisdiction to adjudicate O'Rourke's requests for declaratory and injunctive relief; and (4) sovereign immunity bars O'Rourke's due course of law claim because he did not allege a constitutionally protected interest.

We reverse the order of the trial court and render judgment dismissing all claims against the Wharves.

## Background

O'Rourke is the president of the International Longshormen's Association Local 20, and he has a history of altercations with the Port of Galveston Police Department ("Port Police"). On December 2, 2007, O'Rourke parked his car in front of Terminal 1. When he returned to his car, he discovered that he had received a parking ticket. Port Police Officer E. Perkins, who had written the ticket, was still nearby, and O'Rourke asked him why he had received a ticket.

Officer Perkins referenced O'Rourke's history with the Port Police and, according to O'Rourke, became "heated" during their exchange. As O'Rourke tried to leave, Officer Perkins allegedly ran after O'Rourke, grabbed him around the neck, and tried to push him against a nearby bus.

O'Rourke complained to the Port of Galveston and the Wharves. He asked to see a copy of the security tape that would have shown the incident, but he was allegedly told that the tape had been destroyed. O'Rourke scheduled a hearing before the Wharves concerning the incident. At the hearing, Port Police called Xochitl Castro, a Port employee, who claimed that she had witnessed the incident and implicated O'Rourke as the aggressor. O'Rourke alleged that Castro's testimony was a "complete fabrication."

O'Rourke also alleged that, after the incident, Port Police Chief James Thompson and Port Director Steve Cernak "began an illegal surveillance operation aimed at [him]" that involved using the Port's license plate recognition system to "tag" O'Rourke's vehicle every time he arrived at the Port and manipulating the Port's security cameras to follow and secretly record O'Rourke as he moved about the Port. When Jennifer Prater, a Port employee, complained that Thompson and Cernak's actions violated O'Rourke's civil rights, Thompson allegedly ordered Prater to hide the surveillance on the server.

On November 17, 2009, O'Rourke filed suit against the Wharves, Officer Perkins, Castro, Cernak, and Thompson. O'Rourke asserted claims for invasion of privacy and civil conspiracy against all of the defendants, and he also asserted claims of false imprisonment and assault against Officer Perkins and defamation against Castro. O'Rourke sought compensatory and punitive damages. O'Rourke also sought the following declarations:

(1)     That Defendants be precluded and estopped from illegally spying on O'Rourke when he visits the Port;

(2)     That Defendants acknowledge the longstanding complaints lodged against [Officer] Perkins and take corrective action in order to prevent further assault [or] wrongful conduct by Perkins;

(3)     That Defendants falsified evidence and knowingly presented false testimony at the hearing before the Wharves Board, which is a violation of the due course of law under Art. I, section 19 of the Texas Constitution[;]

(4)     That Defendants be precluded and estopped from illegally targeting any individual with their security equipment; and

(5)     Other matters, which may be appropriate for the Court to declare.

O'Rourke also sought an injunction "prohibiting Defendants from further disparaging [him]; from further defaming [him]; [from] invading [his] privacy; and from coming within a distance of 50 feet from [him]."

The Wharves moved to dismiss the claims against Officer Perkins, Castro, , Cernak, and Thompson pursuant to the election of remedies provision of the Tort

4

Claims Act.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e) (Vernon 2011) ("If a suit is filed under [the Tort Claims Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.").  The trial court granted this motion and dismissed all of O'Rourke's claims against the employees with prejudice.  O'Rourke does not challenge this decision by the trial court, and the employees are therefore not parties to this interlocutory appeal.

The Wharves also filed a plea to the jurisdiction, asserting that governmental immunity barred O'Rourke's claims against it.  Specifically, the Wharves argued that O'Rourke failed to comply with the Tort Claims Act's pre-suit notice provision, which requires a plaintiff to give notice of the incident and the injury claimed, in writing, to the governmental entity within six months after the incident giving rise to the claim.  The Wharves also argued that the Tort Claims Act did not waive its governmental immunity for O'Rourke's intentional tort claims, which are not covered by the Tort Claims Act's waiver of immunity.  The Wharves additionally contended that governmental immunity barred O'Rourke's claims for declaratory and injunctive relief because, among other reasons, these claims were merely "recast" tort claims.

The trial court denied the Wharves' plea to the jurisdiction, and this interlocutory appeal followed.  *See* TEX. CIV. PRAC. & REM. CODE ANN.

5

§ 51.014(a)(8) (Vernon Supp. 2012) (allowing party to take interlocutory appeal from order denying plea to jurisdiction filed by governmental unit).

## Plea to the Jurisdiction

### A. *Standard of Review*

We review a trial court's ruling on a plea to the jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When reviewing a trial court's ruling on a jurisdictional plea, "we first look to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiffs and looking to the pleader's intent," and "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *City of Waco v. Kirwan*, 298 S.W.3d 618, 621–22 (Tex. 2009). In considering this jurisdictional evidence, we "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* at 622. We do not adjudicate the substance of the case but instead determine whether a court has the power to reach the merits of the claim. *City of Houston v. S. Elec. Servs., Inc.*, 273 S.W.3d 739, 744 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). If the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without allowing the plaintiff an opportunity to amend his pleadings. *Miranda*, 133 S.W.3d at 227. If the relevant

6

evidence is undisputed or fails to raise a fact issue as to jurisdiction, the trial court rules on the plea as a matter of law. *Id.* at 228.

### B. O'Rourke's Intentional Tort Claims

In his original petition, O'Rourke asserted claims against the Wharves for invasion of privacy and civil conspiracy. On appeal, O'Rourke stated that "[a]fter consideration," he "is not making claims against [the Wharves] for intentional tort[s]. Thus, to the extent necessary the Court may render on this point." Because O'Rourke has abandoned his intentional tort claims against the Wharves, we render judgment dismissing these claims against the Wharves.

We therefore sustain the Wharves' second issue.[1]

### C. O'Rourke's Declaratory and Injunctive Relief Claims

In its third issue, the Wharves contends that the trial court lacks subject matter jurisdiction to hear O'Rourke's claims for declaratory and injunctive relief.

Sovereign immunity protects the State from lawsuits for money damages, and political subdivisions of the State are entitled to this immunity—referred to as

---

[1]     Because O'Rourke has abandoned his intentional tort claims against the Wharves and his only remaining claims—his claims for declaratory and injunctive relief— are not subject to the Texas Tort Claims Act, we need not address the Wharves' first issue, whether the trial court lacks jurisdiction because O'Rourke failed to provide the pre-suit notice required by Civil Practice and Remedies Code section 101.101(a). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.101(a) (Vernon 2011) ("A governmental unit is entitled to receive notice of a claim against it *under this chapter* not later than six months after the day that the incident giving rise to the claim occurred.") (emphasis added); *Castro v. McNabb*, 319 S.W.3d 721, 732 (Tex. App.—El Paso 2009, no pet.) (concluding that plaintiff's declaratory judgment action could not have been brought under Tort Claims Act).

governmental immunity—unless it has been waived. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 369–70 (Tex. 2009) (quoting *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006)). An exception to governmental immunity exists when the plaintiff seeks declaratory relief against state officials who allegedly act without legal or statutory authority because "[a] state official's illegal or unauthorized actions are not acts of the State." *Id.* at 370 (quoting *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997)); *see also Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (observing that parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority because "suits to compel state officers to act within their official capacity do not attempt to subject the State to liability"). For a suit to fall within this "ultra vires" exception to governmental immunity, the suit "must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372.

In *Heinrich*, the Texas Supreme Court clarified the proper defendant in an ultra vires suit for declaratory relief. Because the "acts of officials which are not lawfully authorized are not acts of the State," the State maintains immunity from suit, and the governmental entity is not a proper defendant. *Id.* at 373. Ultra vires suits must instead be brought against the relevant state actors in their official

8

capacity, "even though the suit is, for all practical purposes, against the state." *Id.* A claimant who successfully establishes an ultra vires claim is entitled to prospective injunctive relief, but he may not recover retrospective monetary damages. *See id.* at 374–76; *see also City of Houston v. Williams*, 216 S.W.3d 827, 828 (Tex. 2007) (per curiam) (holding that governmental immunity prohibits recovery of retrospective money damages).

Sovereign immunity also protects the State from suits to "control state action." *Tex. Logos, L.P. v. Tex. Dep't of Transp.*, 241 S.W.3d 105, 118 (Tex. App.—Austin 2007, no pet.) (quoting *IT-Davy*, 74 S.W.3d at 855–56 and *Director of Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 265 (Tex. 1980)). A suit seeks to control state action when the trial court's judgment would "effectively direct or control a government official in the exercise of his or her statutory authority." *Id.* (citing *Printing Indus. Ass'n*, 600 S.W.2d at 265–66). Sovereign immunity may bar an action to declare statutory authority if the suit is predicated "upon factual allegations that fall entirely within a state official's discretionary power." *Id.* A discretionary act is one that requires the exercise of "personal deliberation, decision and judgment." *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)).

The Uniform Declaratory Judgment Act ("DJA") is a remedial statute designed to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, or other legal relations." *Heinrich*, 284 S.W.3d at 370; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (Vernon 2008). The DJA does not enlarge a trial court's jurisdiction, and a party's request for declaratory relief does not alter the suit's underlying nature. *See Heinrich*, 284 S.W.3d at 370; *IT-Davy*, 74 S.W.3d at 855. Private parties cannot circumvent governmental immunity by characterizing a suit for money damages as a claim for declaratory relief. *See Heinrich*, 284 S.W.3d at 371; *IT-Davy*, 74 S.W.3d at 856.

### 1. *O'Rourke's Declaratory Relief Claims Concerning Allegedly Illegal Surveillance and Corrective Action Against Officer Perkins and Injunctive Relief Claims*

O'Rourke sought the following declarations: (1) "that Defendants be precluded and estopped from illegally spying on O'Rourke when he visits the Port"; (2) "that Defendants acknowledge the longstanding complaints lodged against [Officer] Perkins and take corrective action in order to prevent further assault [or] wrongful conduct by Perkins"; and (3) "that Defendants be precluded and estopped from illegally targeting any individual with their security equipment." O'Rourke also requested that the trial court issue an injunction "prohibiting Defendants from further disparaging [him]; from further defaming

10

[him]; [from] invading [his] privacy; and from coming within a distance of 50 feet from [him]."

O'Rourke contends that these requests concern actions that "constitute illegalities or conduct outside of the Appellants' statutory authority." With these requests for declaratory and injunctive relief, he thus attempted to bring claims that fall within the ultra vires exception to governmental immunity. The Texas Supreme Court made clear in *Heinrich*, however, that the governmental entity at issue retains immunity from ultra vires suits because "acts of officials which are not lawfully authorized are not acts of the State." 284 S.W.3d at 372–73. Instead, the plaintiff must bring the ultra vires suit against the state actors in their official capacity. *Id.* at 373.

Here, the trial court dismissed with prejudice all claims against the individual state-actor defendants, leaving only the claims against the Wharves pending. O'Rourke does not challenge the propriety of this action on appeal. He seeks a declaration that Port Police employees acted illegally and exceeded their authority by "spying" on O'Rourke and by failing to discipline Officer Perkins, and he seeks an injunction prohibiting Port Police employees from further disparaging him, defaming him, or invading his privacy. These ultra vires claims cannot be brought against the Wharves, the governmental entity. *See id.* The Wharves' governmental immunity thus remains intact for these claims. *See id.* at

11

372–73; *see also Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam) ("[T]he proper defendant in an *ultra vires* action is the state official whose acts or omissions allegedly trampled on the plaintiff's rights, not the state agency itself.").

Furthermore, in one of these requests, O'Rourke sought a declaration that the Wharves "acknowledge the longstanding complaints lodged against [Officer] Perkins and take corrective action in order to prevent further assault [or] wrongful conduct by Perkins." A decision concerning the discipline, or lack thereof, of a police officer is a discretionary act. *See City of Palestine v. Ramirez*, 925 S.W.2d 250, 253 (Tex. App.—Tyler 1996, no writ) (citing *Wyse v. Dep't of Pub. Safety*, 733 S.W.2d 224, 227 (Tex. App.—Waco 1986, writ ref'd n.r.e.)); *see also City of Hidalgo v. Prado*, 996 S.W.2d 364, 368 (Tex. App.—Corpus Christi 1999, no pet.) (holding that official's decision to reprimand employee "requires personal deliberation and judgment and is, therefore, a discretionary function"). This decision "involves an ongoing analysis that includes investigating possible wrongful conduct, determining the severity of the alleged act, and deciding on the appropriate punishment, if required." *See Prado*, 996 S.W.2d at 368. Port Police maintain discretion over how to discipline Officer Perkins for his alleged history of wrongful conduct, and this discretion includes finding that Perkins has committed no misconduct and, therefore, no "corrective action" needs to be taken against him.

12

This particular request for declaratory relief therefore seeks to control state action and, absent legislative permission, is barred by governmental immunity. *See Tex. Logos*, 241 S.W.3d at 118; *McLane Co.*, 148 S.W.3d at 650–51.

We conclude that governmental immunity bars these requests for declaratory and injunctive relief.[2] We hold that the trial court erred in denying the Wharves' plea to the jurisdiction concerning these claims.

### 2. O'Rourke's Declaratory Relief Claim Concerning Falsification of Evidence and Testimony Before the Board

O'Rourke also sought a declaration that the "Defendants falsified evidence and knowingly presented false testimony at the hearing before the Wharves Board, which is a violation of the due course of law under Art. I, section 19 of the Texas Constitution."

"A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and if the controversy will be resolved by the declaration sought." *City of Arlington v. Randall*, 301 S.W.3d 896, 908 (Tex. App.—Fort Worth 2009, pet. denied); *see also Etan Indus., Inc. v.*

---

[2] We additionally note that, in a claim for injunctive relief, the governmental entity retains immunity "from a suit seeking imposition of an affirmative duty based on a past alleged actionable wrong." *City of Arlington v. Randall*, 301 S.W.3d 896, 907 (Tex. App.—Fort Worth 2009, pet. denied); *see also Tex. Emp't Comm'n v. Martinez*, 545 S.W.2d 876, 877 (Tex. Civ. App.—El Paso 1976, no writ) ("Generally, it is the purpose of injunctive relief to halt wrongful acts threatened or that are in the course of accomplishment, rather than to grant relief against past actionable wrongs or to prevent the commission of wrongs not eminently threatened.").

*Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (per curiam) (holding that DJA is intended to provide means of determining parties' rights when controversy has arisen but before wrong has been committed and is "preventative in nature"); *Russell v. Metro. Transit Auth. of Harris Cnty.*, 343 S.W.3d 825, 833 (Tex. App.—Houston [14th Dist.] 2011, no pet.) ("For a justiciable controversy to exist, there must be a real and substantial controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute."). A request for declaratory judgment is moot "if the claim presents 'no live controversy.'" *Etan Indus.*, 359 S.W.3d at 624 (quoting *Tex. A&M Univ.-Kingsville v. Yarbrough*, 347 S.W.3d 289, 290 (Tex. 2011)). Declaratory relief is not warranted unless the claim "presents a 'substantial controversy' of 'immediacy and reality.'" *Id.* (quoting *Yarbrough*, 347 S.W.3d at 291). A controversy ceases to exist when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S. Ct. 669, 676 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."). If a case becomes moot, the plaintiff loses standing to maintain his claims. *Williams*, 52 S.W.3d at 184 (holding that because plaintiffs "no longer face the unconstitutional conduct about which they complain," any prospective relief that court might grant

"cannot help them," and their injunctive and declaratory relief claims are moot); *see also Bland Indep. Sch. Dist.*, 34 S.W.3d at 553–54 ("Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case."); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993) ("Subject matter jurisdiction is essential to the authority of a court to decide a case. Standing is implicit in the concept of subject matter jurisdiction.").

This request for declaratory relief concerns one instance of alleged misconduct: the Wharves, through Castro, falsified evidence and knowingly presented false testimony at the February 21, 2008 hearing before the Wharves Board. There is no indication that this alleged misconduct will recur. The trial court dismissed with prejudice O'Rourke's defamation claim against Castro. O'Rourke also affirmatively states in his appellate brief that he "does not seek monetary damages with this claim nor a declaration as to his reputation"—i.e., a declaration that this testimony negatively affected his reputation. Thus, a declaration that the Wharves violated the due course of law provision when it allegedly falsified evidence and testimony would have no practical effect and would resolve no controversy between the parties. *See Williams*, 52 S.W.3d at 184; *Randall*, 301 S.W.3d at 908 (holding that declaratory judgment is only appropriate if controversy will be resolved by declaration sought). This claim for

15

declaratory relief is therefore moot, and O'Rourke lacks standing to maintain this claim. *Williams*, 52 S.W.3d at 184.

Furthermore, as the Wharves contends in its fourth issue, O'Rourke has not asserted a constitutionally protected interest with respect to this claim, which seeks a declaration that the Wharves violated the due course of law provision of the Texas Constitution.

The due course of law provisions provides, "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. Generally, governmental immunity "does not shield a governmental entity from a suit for declaratory relief based on alleged constitutional violations." *Randall*, 301 S.W.3d at 908. However, if the plaintiff "is attempting to restrain a state officer's conduct on the grounds that it is unconstitutional, [he] must allege facts that actually constitute a constitutional violation." *Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality*, 307 S.W.3d 505, 516 (Tex. App.—Austin 2010, no pet.). To be able to maintain a due course of law claim, the plaintiff must identify a liberty or property interest that is entitled to protection. *See Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995); *see also Nat'l Collegiate Athletic Ass'n v. Yeo*, 171 S.W.3d 863, 870 (Tex. 2005) (dismissing due process claim because plaintiff asserted no interest protected by

16

article I, section 19); *Gatesco Q.M., Ltd. v. City of Houston*, 333 S.W.3d 338, 351 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that plaintiff did not sufficiently plead entitlement to declaratory relief for due course of law violation because it had not pleaded existence of property interest subject to protection). "Reputation alone, apart from some more tangible interests such as employment, does not constitute either 'liberty' or 'property' by itself sufficient to invoke protections of procedural due process." *De Mino v. Sheridan*, 176 S.W.3d 359, 369 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

O'Rourke asserted that the Wharves violated the due course of law provision when it falsified evidence and knowingly presented false testimony at the hearing before the Board, but he has not, at any stage of the proceedings, identified a constitutionally protected interest that the Wharves allegedly infringed upon by this conduct. O'Rourke's reputation, to the extent that he claims it was damaged by the allegedly false testimony offered at the hearing, does not, by itself, constitute a sufficient liberty or property interest to invoke due process protection. *See id.* Governmental immunity, therefore, bars this declaratory relief claim. *See Gatesco*, 333 S.W.3d at 351 (holding that if plaintiff did not sufficiently plead property interest, claim would be barred by governmental immunity).

We sustain the Wharves' third and fourth issues.[3]

## Conclusion

We reverse the order of the trial court and render judgment dismissing all claims against the Wharves.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Justice Sharp, dissenting in an opinion to follow.

---

[3] O'Rourke also requested that the trial court "declare other matters, which may be appropriate for the Court to declare." O'Rourke concedes in his appellate brief that it is proper for this Court to reverse and render judgment dismissing this request.

18