**Opinion issued July 30, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00844-CV

————————————

**NEIGHBORHOOD CENTERS INC., Appellant and Cross-Appellee**

**V.**

**DOREATHA WALKER, Appellee and Cross-Appellant**

———

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Case No. 2014-37034**

———

## O P I N I O N

Appellee and cross-appellant Doreatha Walker sued her former employer, appellant and cross-appellee Neighborhood Centers Inc. ("Neighborhood Centers"), for its alleged retaliation against her for filing a workers' compensation

claim.[1] She also sued Neighborhood Centers under the Whistleblower Protection Act.[2] Neighborhood Centers filed a plea to the jurisdiction asserting that it had governmental immunity from Walker's claims. The trial court granted the plea as to Walker's workers' compensation anti-retaliation claim, and it denied the plea as to Walker's claim under the Whistleblower Protection Act.

In its sole issue on appeal, Neighborhood Centers argues that the trial court erred in denying its plea to the jurisdiction on Walker's claim under the Whistleblower Protection Act. Walker argues in her sole issue on cross-appeal that the trial court erred in granting Neighborhood Centers' plea to the jurisdiction on her workers' compensation anti-retaliation claim.

We affirm.

### Background

Neighborhood Centers is a private, non-profit corporation that provides services—including Head Start, workforce career centers, meals and programs for seniors, immigration services, tax preparation services, and a community credit union—to low-income communities in Houston. Neighborhood Centers also

---

[1] *See* TEX. LABOR CODE ANN. § 451.001 (Vernon 2015).

[2] *See* TEX. GOV'T CODE ANN. §§ 554.001–.010 (Vernon 2012).

2

operates the Promise Community School, an open-enrollment charter school established pursuant to Texas Education Code chapter 12.[3]

Neighborhood Centers hired Walker, who has a master's degree and is certified in mid-management as a school principal, for the 2013-2014 school year to work as a third-grade teacher at the Promise Community School. Walker alleged that while she was employed with Neighborhood Centers she observed health code violations and various testing irregularities, which she described as "cheating irregularities," "[s]pecial education testing irregularities," and untimely provision of Individualized Education Plans. Walker also observed health code violations and eventually filed a workers' compensation claim for health issues that she asserts were caused by the health code violations she observed at the school.

Walker alleged that after she filed her workers' compensation claim Neighborhood Centers forced her to accept a demotion and reassignment as "an Interventionist and a Girl Scout Leader," and Neighborhood Centers' insurer denied her workers' compensation claim. Walker reported her observations regarding the testing violations and health code violations to the Texas Education Agency and the Texas Health Department, respectively. She asserts that once her

---

[3]    *See* TEX. EDUC. CODE ANN. §§ 12.001–12.156 (Vernon 2012 & Supp. 2014). The Education Code provides for three classes of charters: (1) a home-rule school district charter; (2) a campus or campus program charter; or (3) an open-enrollment charter. *Id.* § 12.002 (Vernon 2012). The Promise Community School operates as an open-enrollment charter, governed by subchapter D of chapter 12.

report of these violations came to light Neighborhood Centers terminated her employment on a pretext.

Walker filed suit against Neighborhood Centers, alleging that its actions in demoting and subsequently firing her violated Labor Code section 451.001—which prohibits retaliation against an employee for filing a workers' compensation claim—and Government Code section 554.002(a)—a provision of the Whistleblower Protection Act that prohibits a state or local governmental entity from retaliating against an employee who has reported a violation of law to an appropriate law enforcement authority.

Neighborhood Centers filed a plea to the jurisdiction, arguing that its immunity from suit and liability barred Walker's workers' compensation anti-retaliation claim. It argued that open enrollment charter schools, such as the Promise Community School, have the same immunity as a public school district. Relying on the Texas Supreme Court's opinion in *Travis Central Appraisal District v. Norman*, 342 S.W.3d 54 (Tex. 2011), it argued that governmental immunity is not waived for retaliatory discharge claims under Labor Code chapter 451. Neighborhood Centers also argued that it is not a "political subdivision" or "local governmental entity" under the Whistleblower Protection Act, as that act defines "local governmental entity" narrowly. It asserted that all of Walker's claims must be dismissed for lack of subject-matter jurisdiction.

4

The trial court granted Neighborhood Centers' plea to the jurisdiction as to Walker's workers' compensation anti-retaliation claim, and it denied the plea as to Walker's claim under the Whistleblower Protection Act. Both Neighborhood Centers and Walker filed notices of appeal.

**Standard of Review**

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear the case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject-matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Id.* at 446; *see also Weir Bros., Inc. v. Longview Econ. Dev. Corp.*, 373 S.W.3d 841, 847 (Tex. App.—Dallas 2012, no pet.) ("[The plaintiff] had the burden to plead facts that affirmatively demonstrate a waiver of governmental immunity and that the court has subject matter jurisdiction.").

We review a trial court's ruling on a plea to the jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In reviewing the ruling, an appellate court "must determine whether facts have been alleged that affirmatively demonstrate jurisdiction in the trial court." *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008).

5

When reviewing a trial court's ruling on a jurisdictional plea, "we first look to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiffs and looking to the pleader's intent," and "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *City of Waco v. Kirwan*, 298 S.W.3d 618, 621–22 (Tex. 2009). We do not adjudicate the substance of the case but instead determine whether a court has the power to reach the merits of the claim. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554; *Bd. of Trs. of Galveston Wharves v. O'Rourke*, 405 S.W.3d 228, 233 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

If the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without allowing the plaintiff an opportunity to amend her pleadings. *Miranda*, 133 S.W.3d at 227. If the relevant evidence is undisputed or fails to raise a fact issue as to jurisdiction, the trial court rules on the plea as a matter of law. *Id.* at 228.

"Under the common-law doctrine of sovereign immunity, the [state] cannot be sued without its consent." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the state, including counties, cities, and school districts. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Like sovereign immunity, "governmental immunity has two components: immunity from liability,

6

which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity from suit deprives a trial court of subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction, while immunity from liability is an affirmative defense. *See Miranda*, 133 S.W.3d at 224–26. Furthermore, "[i]mmunity from suit bars a suit against the State unless the Legislature expressly consents to the suit." *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002).

"[F]or the Legislature to waive the State's sovereign immunity, a statute or resolution must contain a clear and unambiguous expression of the Legislature's waiver of immunity." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003); *see also Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012) (recognizing that immunity from suit "remains intact unless surrendered in express and unequivocal terms by the statute's clear and unambiguous waiver"). The supreme court has "repeatedly affirmed that any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity." *Chatha*, 381 S.W.3d at 513 (citing *Taylor*, 106 S.W.3d at 696); *see also* TEX. GOV'T CODE ANN. § 311.034 (Vernon 2013) ("In order to preserve the legislature's interest in managing state fiscal matters through

7

the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

## Interlocutory Appeal

As a preliminary matter, Walker argues that Neighborhood Centers is a private, non-profit corporation that does not enjoy governmental immunity from suit. She contends that if we agree on that point, then "the Court should dismiss Neighborhood Centers' issue on appeal for lack of appellate jurisdiction." We disagree.

Civil Practice and Remedies Code section 51.014(a)(8) provides that "[a] person may appeal from an interlocutory order of a district court . . . that . . . grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2015). Section 101.001(3), which is part of the Tort Claims Act, provides a four-part definition of "governmental unit" that includes this broad provision:

> (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

*Id.* § 101.001(3) (Vernon Supp. 2014); *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 75–76 (Tex. 2011).

In *C2 Construction*, a construction company sued LTTS Charter School, Inc., a private non-profit corporation that operated an open-enrollment charter

8

school called Universal Academy, for breach of contract. 342 S.W.3d at 75. The Texas Supreme Court analyzed the provisions in Civil Practice and Remedies Code sections 51.014 and 101.001(3) for the "narrow issue" posed in that case: whether an open-enrollment charter school is a "governmental unit" as defined in Section 101.001(3)(D) of the Tort Claims Act and thus is able to take an interlocutory appeal from a trial court's denial of its plea to the jurisdiction. *Id.* at 74–75. It concluded:

> Open-enrollment charter schools are governmental units for Tort Claims Act purposes because: (1) the Act defines "governmental unit" broadly to include "any other institution, agency, or organ of government" derived from state law; (2) the Education Code defines open-enrollment charter schools as "part of the public school system," which are "created in accordance with the laws of this state," subject to "state laws and rules governing public schools," and, together with traditional public schools, "hav[e] the primary responsibility for implementing the state's system of public education[";] and (3) the Legislature considers open-enrollment charter schools to be "governmental entit[ies]" under a host of other laws outside the Education Code.

*Id.* at 82.

The supreme court held that an open-enrollment charter school is a governmental unit as defined in Civil Practice and Remedies Code section 101.001(3), and thus a court of appeals has jurisdiction to hear an interlocutory appeal from the trial court's order granting or denying the charter school's plea to the jurisdiction pursuant to Civil Practice and Remedies Code section 51.014(a)(8). *See id.*

9

Here, as in *C2 Construction*, Walker sued a private, non-profit entity that operates an open-enrollment charter school for activities related to its operation of that school. *See id.* at 73. Based on the supreme court's precedent in *C2 Construction*, we hold that Neighborhood Centers is a governmental unit as that term is defined in Civil Practice and Remedies Code section 101.001 and that, therefore, this Court has jurisdiction over this interlocutory appeal under the express language of section 51.014(a)(8). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); *id.* § 101.001(3); *C2 Constr., Inc.*, 342 S.W.3d at 82.

**Plea to the Jurisdiction on Walker's Workers' Compensation Anti-Retaliation Claim**

In her sole issue on cross-appeal, Walker argues that the trial court erred in granting Neighborhood Centers' plea to the jurisdiction on her workers' compensation anti-retaliation claim under Labor Code section 451.001. *See* TEX. LABOR CODE ANN. § 451.001 (Vernon 2015). She argues that "[g]overnmental immunity from suit is a common-law doctrine, and its boundaries are carefully drawn by the judiciary." She further argues that the anti-retaliation statute creates a private cause of action and that "Texas courts have not decisively afforded entities like Neighborhood Centers immunity from suit." Walker also argues that the Education Code only provides that open-enrollment charter schools are immune from *liability* to the same extent as public school districts and does not explicitly mention immunity from *suit*. *See* TEX. EDUC. CODE ANN. § 12.1056

10

(Vernon 2012); *see also Tooke*, 197 S.W.3d at 332 (holding that governmental immunity has two components: immunity from suit, which bars suit against governmental entity, and immunity from liability, which bars enforcement of judgment against governmental entity). Finally, Walker argues that "[a]n entity should not obtain immunity from suit merely by operating an open-enrollment charter school." She argues that granting Neighborhood Centers immunity from suit because it operates an open-enrollment charter school would not serve the purposes of governmental immunity, i.e., "to shield the public from the costs and consequences of improvident actions of their governments," *see Tooke*, 197 S.W.3d at 331, and that "[n]either Neighborhood Centers nor its open-enrollment charter school is legislatively endowed with any governmental powers."

Neighborhood Centers responds that numerous courts of appeals, including this Court, have held that charter schools enjoy the same immunity from suit as traditional public school districts. It further argues that, because the Texas Supreme Court has held that governmental immunity has not been waived for claims under the Workers' Compensation Act's anti-retaliation provision set out in Labor Code section 451.001, the trial court lacked jurisdiction over Walker's claim under the anti-retaliation provision of the Act. We agree with Neighborhood Centers.

As discussed above, the supreme court held in *C2 Construction* that an open-enrollment charter school is a governmental unit for purposes of the Tort Claims Act and, thus, the Dallas Court of Appeals had jurisdiction over an interlocutory appeal challenging the trial court's ruling on the charter school's plea to the jurisdiction. *C2 Constr., Inc.*, 342 S.W.3d at 82 (hereinafter "*C2 Construction I*"). However, the supreme court left undecided the underlying issue of whether the charter school, Universal Academy, enjoyed immunity from suit on the contract claim of the plaintiff, C2 Construction. *Id.* It remanded the case to the Dallas Court of Appeals for consideration of that question. *See id.*

On remand, the Dallas Court of Appeals determined, based on the supreme court's analysis in *C2 Construction I*, that Universal Academy had governmental immunity from suit on the plaintiff's contract claim. *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 358 S.W.3d 725, 735–36 (Tex. App.—Dallas 2011, pet. denied) (hereinafter *C2 Construction II*). The Dallas Court of Appeals observed that the supreme court relied on the following reasoning in reaching its holding in *C2 Construction I*:

> [O]pen-enrollment charter schools (1) are statutorily declared to be "part of the public school system of this state"; (2) derive "authority to wield 'the powers granted to [traditional public] schools' and to receive and spend state tax dollars (and in many ways to function as a governmental entity)" from a "comprehensive statutory regime"; (3) have "responsibility for implementing the state's system of public education"; and (4) "are generally subject to 'state laws and rules

12

governing public schools,'" including regulation of open meetings and access to public information.

*C2 Constr. II*, 358 S.W.3d at 735 (quoting *C2 Constr. I*, 342 S.W.3d at 77–78). The Dallas court reasoned that "[t]hose same attributes and circumstances support a conclusion of governmental immunity" from suit and concluded that "open-enrollment charter schools have governmental immunity from suit." *Id.* at 735–36 (citing *Univ. Interscholastic League v. Sw. Officials Ass'n, Inc.*, 319 S.W.3d 952, 962 (Tex. App.—Austin 2010, no pet.)).

This Court and others have subsequently recognized that an open-enrollment charter school "enjoys governmental immunity from suit" for a variety of claims. *KIPP, Inc. v. Whitehead*, 446 S.W.3d 99, 105 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 208 (Tex. App.—Dallas 2012, no pet.)); *see also Rosenberg v. KIPP, Inc.*, 458 S.W.3d 171, 177–78 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (holding that plaintiff failed to prove waiver of immunity from suit in discrimination case and, thus, trial court properly granted open-enrollment charter school's plea to jurisdiction and dismissed plaintiff's claims); *Tejano Cntr. for Cmty. Concerns, Inc. v. Olvera*, No. 13-13-00289-CV, 2014 WL 4402210, at *2–5 (Tex. App.—Corpus Christi Aug. 29, 2014, no pet.) (mem. op.) (applying waiver of immunity analysis applicable to public school districts to claim against open-enrollment charter school); *El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 385 S.W.3d

13

701, 708 (Tex. App.—El Paso 2012, pet. denied) (citing *C2 Construction II* favorably and holding that "the Legislature has waived [the open-enrollment charter school's] immunity to suit for the purpose of adjudicating a breach-of-contract claim" pursuant to Local Government Code section 271.151(2)).

Thus, we conclude that, here, where the suit implicates the nature, purposes, and powers of the public schools as exercised by Neighborhood Centers' open-enrollment charter school, Neighborhood Centers enjoys immunity from suit. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 325 (Tex. 2006). And because governmental immunity applies, the trial court lacks subject-matter jurisdiction absent a clear and unambiguous waiver of that immunity by the Legislature. *See Tooke*, 197 S.W.3d at 332–33; *Miranda*, 133 S.W.3d at 224–26; *see also City of Dallas v. Albert*, 354 S.W.3d 368, 374 (Tex. 2011) (holding that waivers of sovereign immunity or consent to sue governmental entities must generally be found in actions of Legislature). We therefore turn to whether Neighborhood Centers' immunity to suit has been waived for a workers' compensation anti-retaliation claim brought pursuant to Labor Code chapter 451.

In *Travis Central Appraisal District v. Norman*, the Texas Supreme Court addressed the issue of waiver of governmental immunity under the same statute Walker relies upon in her pleadings—"the Texas Anti-Retaliation Law, found in

14

Chapter 451 of the Texas Labor Code, [which] prohibits a person from discharging or discriminating against an employee, who in good faith files a workers' compensation claim." 342 S.W.3d 54, 54 (Tex. 2011) (citing TEX. LAB. CODE ANN. § 451.001(1)). In *Norman*, the supreme court recognized that the anti-retaliation provision of the Workers' Compensation Act "applies to private employers." *Id.* The court acknowledged that it had previously held that, while the anti-retaliation statute itself did not waive governmental immunity, the 1981 and 1989 versions of Labor Code chapter 504, also known as the Political Subdivisions Law, reflected a legislative intent to waive governmental immunity for retaliatory discharge claims under chapter 451. *Id.* at 56–57 (citing *City of LaPorte v. Barfield*, 898 S.W.2d 288, 298–99 (Tex. 1995) (holding that Chapter 504 waives the governmental immunity of political subdivisions for retaliatory discharge claims under Chapter 451)).

However, the supreme court in *Norman* also observed that, following the 2005 revisions to the Political Subdivisions Law, the statute no longer contained a clear and unambiguous waiver of immunity from suit under the anti-retaliation provision. *Id.* at 57–59. The court concluded, "Because a retaliatory discharge claim may not be brought against the government without its consent and the Political Subdivisions Law no longer provides such consent by waiving the

15

government's immunity, the underlying claim in this case must be dismissed." *Id.* at 59.

Following the reasoning of the supreme court in *Norman*, we conclude that the Legislature has not provided a clear and unambiguous waiver of Neighborhood Centers' governmental immunity from suit on Walker's anti-retaliation claim. *See id.* Accordingly, the trial court lacked subject-matter jurisdiction over this claim and properly granted Neighborhood Centers' plea to the jurisdiction on this claim. *See Tooke*, 197 S.W.3d at 332–33; *Miranda*, 133 S.W.3d at 224–26.

Walker's arguments to the contrary disregard the precedent of the supreme court and this Court and are unavailing. As the supreme court held in *C2 Construction I*, the Education Code grants open-enrollment charter schools "status as 'part of the public school system of this state'" and "authority to wield 'the powers granted to [traditional public] schools,'" including the authority "to receive and spend state tax dollars (and in many ways to function as a governmental entity)." 342 S.W.3d at 78. Thus, the supreme court recognized that the Education Code does endow entities operating open-enrollment charter schools with some governmental powers.

Regarding immunity, several courts of appeals, including this Court, have extended the reasoning of *C2 Construction I* to provide open-enrollment charter schools with immunity from suit in addition to immunity from liability. *See, e.g.*,

16

*KIPP, Inc.*, 446 S.W.3d at 105; *C2 Constr. II*, 358 S.W.3d at 735–36; *see also* TEX. EDUC. CODE ANN. § 12.1056 ("In matters related to operation of an open-enrollment charter school, an open-enrollment charter school is immune from liability to the same extent as a public school district. . . ."). Recognizing Neighborhood Centers' immunity from suit serves the public policy interest of shielding "the public from the costs and consequences of improvident actions of their governments," as Neighborhood Centers has been granted the authority "to receive and spend state tax dollars (and in many ways to function as a governmental entity)" in its role as operator of an open-enrollment charter school. *See C2 Constr. I*, 342 S.W.3d at 78; *Tooke*, 197 S.W.3d at 332.

We hold that Neighborhood Centers enjoys immunity from Walker's suit under the anti-retaliation provision of the Workers' Compensation Act in Labor Code chapter 451 and that its immunity has not been clearly and unambiguously waived.

We overrule Walker's sole issue on appeal.

**Plea to the Jurisdiction on Walker's Whistleblower Protection Act Retaliation Claim**

In its sole issue on appeal, Neighborhood Centers argues that the trial court erred in denying its plea to the jurisdiction on Walker's retaliation claim under the Whistleblower Protection Act. It argues that, as a public charter school, it is not

17

subject to the Whistleblower Protection Act and, accordingly, Walker cannot allege any waiver of its governmental immunity from suit under that statute.

Neighborhood Centers acknowledges that the supreme court has held that open-enrollment charter schools are "governmental units" under the Texas Tort Claims Act. *See C2 Constr. I*, 342 S.W.3d at 82. However, it argues that the definition of "governmental unit" in the Tort Claims Act is broader than the definition of "local governmental entity" in the Whistleblower Protection Act. It argues that it is not a "political subdivision of the state" within the meaning of the Whistleblower Protection Act because it does not have the characteristics of a state governing board or of a traditional political subdivision of the state, such as the power to assess and collect taxes, a governing body that is either elected in local elections or appointed by locally-elected officials, or jurisdiction over a portion of the state. *See Guar. Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex. 1980) (providing characteristics that "political subdivisions" possess). Neighborhood Centers' argument thus turns on whether an entity operating an open-enrollment charter school falls within the definition of "local governmental entity" in the Whistleblower Protection Act such that its immunity is waived for anti-retaliation claims filed under the Act.

18

**A. Relevant Provisions of the Whistleblower Protection Act and Education Code**

The Whistleblower Protection Act, in Government Code section 554.002, prohibits retaliation for reporting a violation of law:

> A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

TEX. GOV'T CODE ANN. § 554.002(a) (Vernon 2012). In section 554.001, the Whistleblower Protection Act defines "local governmental entity" as used in section 554.002 to mean "a political subdivision of the state, including a: (A) county; (B) municipality; (C) public school district; or (D) special-purpose district or authority." *Id.* § 554.001(2) (Vernon 2012).

"A public employee whose employment is suspended or terminated or who is subjected to an adverse personnel action in violation of Section 554.002 is entitled to sue for: (1) injunctive relief; (2) actual damages; (3) court costs; and (4) reasonable attorney fees." *Id.* § 554.003(a) (Vernon 2012). The term "public employee" is defined for this purpose to mean "an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity." *Id.* § 554.001(4).

The Whistleblower Protection Act also contains a waiver of immunity:

A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

*Id.* § 554.0035 (Vernon 2012).

The Education Code provides statutes setting out the status and authority of open-enrollment charter schools. The Education Code unequivocally provides that "[a]n open-enrollment charter school is part of the public school system of this state." TEX. EDUC. CODE ANN. § 12.105 (Vernon 2012); *C2 Constr. I*, 342 S.W.3d at 76. Open-enrollment charter schools are publically funded institutions. TEX. EDUC. CODE ANN. § 12.106 (Vernon 2012); *C2 Constr. I*, 342 S.W.3d at 77.

The Education Code provides generally that "an open-enrollment charter school is subject to federal and state laws and rules governing public schools and to municipal zoning ordinances governing public schools." *Id.* § 12.103(a) (Vernon 2012). The Education Code also grants an open-enrollment charter school the "powers granted to [traditional public] schools under [Education Code title 2]" and the authority to "provide instruction to students at one or more elementary or secondary grade levels as provided by the charter." *Id.* § 12.102(1)–(3), 12.104(a) (Vernon Supp. 2014).

The Education Code also "subjects open-enrollment charter schools to a host of statutes that govern governmental entities outside the Education Code." *C2*

20

*Constr. I*, 342 S.W.3d at 78. Specifically, the Code provides that open-enrollment charter schools are: (1) "governmental bodies" for purposes of Open Meetings and Public Information Laws; (2) a "local government" under laws relating to local government records; and (3) a "governmental entity," "political subdivision," and "local government" for purposes of public purchasing and contracting laws. *See* TEX. EDUC. CODE ANN. §§ 12.1051–12.1055 (Vernon 2012 & Supp. 2014); *C2 Constr. I*, 342 S.W.3d at 77; *see also* TEX. EDUC. CODE ANN. § 12.1054–12.1055 (Vernon 2012 & Supp. 2014) (providing for applicability of law relating to conflict of interest and nepotism laws to open-enrollment charter schools, their governing bodies, members, and officers).

Finally, section 12.1056 provides, "In matters related to operation of an open-enrollment charter school, an open-enrollment charter school is immune from liability to the same extent as a public school district. . . ." TEX. EDUC. CODE ANN. § 12.1056.

### B. Interpretation of Whistleblower Protection Act

The Dallas Court of Appeals addressed arguments similar to those raised by Neighborhood Centers in *Pegasus School of Liberal Acts & Sciences v. Ball-Lowder*. That court held that, in spite of the differences in the statutory definitions of "governmental unit" in the Tort Claims Act and "local governmental entity" in the Whistleblower Protection Act, "the Whistleblower Protection Act's definition

21

of 'local governmental entity' must be interpreted to include an open-enrollment charter school." *Pegasus Sch. of Liberal Arts & Scis. v. Ball-Lowder*, No. 05-13-00482-CV, 2013 WL 6063834, at *5 (Tex. App.—Dallas Nov. 18, 2013, pet. denied). The court in *Pegasus School* held that a private, non-profit entity operating an open-enrollment charter school, such as Neighborhood Centers here, is subject to the Whistleblower Protection Act and to its waiver of immunity from suits under that Act. *See id.*

Neighborhood Centers argues, however, that we should not rely on the Dallas Court of Appeals' opinion in *Pegasus School*. It argues that the *Pegasus School* opinion strays from the established precedent of the supreme court in *C2 Construction I*, that it erroneously applies the broad definition of "governmental unit" to the more narrowly defined term of "local governmental entity," and that it confuses two distinct issues: "(1) the extent of an open-enrollment charter school's immunity, and (2) the basic applicability of a law and statutory cause of action to open-enrollment charter schools." We disagree for the reasons set out below.

In reaching its conclusion in *Pegasus School*, the Dallas Court of Appeals began by discussing both the supreme court's opinion in *C2 Construction I* and its own opinion in that case on remand, *C2 Construction II*. *Id.* at *3–5.

In *C2 Construction I*, the supreme court's analysis involved the "broad," "catch-all" provision in the Tort Claims Act, found in Civil Practice and Remedies

22

Code section 101.001(3)(D).  Section 101.001(3)(D) states that a "governmental unit" includes "any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution."  TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(D); *C2 Constr. I*, 342 S.W.3d at 76.

> As we stated above, the supreme court concluded in *C2 Construction I*:

> Open-enrollment charter schools are governmental units for Tort Claims Act purposes because: (1) the Act defines "governmental unit" broadly to include "any other institution, agency, or organ of government" derived from state law; (2) the Education Code defines open-enrollment charter schools as "part of the public school system," which are "created in accordance with the laws of this state," subject to "state laws and rules governing public schools," and, together with traditional public schools, "hav[e] the primary responsibility for implementing the state's system of public education[";] and (3) the Legislature considers open-enrollment charter schools to be "governmental entit[ies]" under a host of other laws outside the Education Code.

342 S.W.3d at 82.  It held that an open-enrollment charter school is a governmental unit as defined in Civil Practice and Remedies Code section 101.001(3), and thus, a court of appeals has jurisdiction to hear an interlocutory appeal from the trial court's order granting or denying the charter school's plea to the jurisdiction pursuant to Civil Practice and Remedies Code section 51.014(a)(8).  *See id.*

Accordingly, the Dallas court in *C2 Construction II* considered the question of whether the charter school's immunity had been waived by Local Government

23

Code section 271.152, which provides a waiver of immunity for limited breach of contract claims. 358 S.W.3d at 734.

The provision of the Local Government Code relevant to the claims in *C2 Construction II* contains its own definition of "local governmental entity": According to section 271.151(3), a "local governmental entity" means "a political subdivision of this state . . . including a . . . public school district and junior college district." TEX. LOC. GOV'T CODE ANN. § 271.151(3) (Vernon 2005). In *C2 Construction II*, the Dallas court concluded that an open-enrollment charter school is a "local governmental entity" for purposes of the waiver of immunity in Local Government Code section 271.152. *C2 Constr. II*, 358 S.W.3d at 742. Noting that Education Code section 12.103 specifies that "an open-enrollment charter school is subject to federal and state laws and rules governing public schools," it reasoned that the waiver of immunity from contract claims against public schools must also extend to open-enrollment charter schools. *Id.* at 741 (citing *C2 Constr. I*, 342 S.W.3d at 78 n.44).

Against the backdrop of this history of the *C2 Construction* cases, the Dallas court in *Pegasus School* turned to the question of whether an open-enrollment charter school is a "local governmental entity" under the Whistleblower Protection Act—the same question we must answer here.

The *Pegasus School* court stated that the Whistleblower Protection Act and Local Government Code section 271.151(3) contain "almost identical" provisions. 2013 WL 6063834, at *5; *compare* TEX. GOV'T CODE ANN. § 554.002(a) (Whistleblower Protection Act) ("'Local governmental entity' means a political subdivision of the state, including a . . . public school district"), *with* TEX. LOC. GOV'T CODE ANN. § 271.151(3) ("'Local governmental entity' means a political subdivision of this state . . . including a . . . public school district"). The court held that "[t]he attributes and circumstances" of open-enrollment charter schools relied on in both *C2 Construction I* and *C2 Construction II*—i.e., that they are part of the public school system, have "responsibility for implementing the state's school system of public education, and are subject to state laws and rules governing public schools, among other factors"—are equally relevant and applicable in determining whether an open-enrollment charter school is a "local governmental entity" under the Whistleblower Protection Act. *Pegasus School*, 2013 WL 6063834, at *5 (citing *C2 Constr. II*, 358 S.W.3d at 736–37, 741). The *Pegasus School* court held that the logic of its opinion in *C2 Construction II* likewise compelled its holding that an open-enrollment charter school was a "local governmental entity" under the Whistleblower Protection Act. *Id.*

We agree with the conclusions of the Dallas Court of Appeals in *C2 Construction II* and in *Pegasus School*. The Education Code grants open-

25

enrollment charter schools "status as 'part of the public school system of this state'" and "authority to wield 'the powers granted to [traditional public] schools,'" including the power "to receive and spend state tax dollars (and in many ways to function as a governmental entity)." *C2 Constr. I*, 342 S.W.3d at 78 (citing TEX. EDUC. CODE ANN. §§ 12.104–12.106). Moreover, the Education Code expressly provides that "an open-enrollment charter school is subject to federal and state laws and rules governing public schools" and waives an open-enrollment charter school's immunity from liability "to the same extent as a public school district." *Id.* §§ 12.103(a), 12.1056.

Furthermore, as the supreme court recognized, the Education Code "subjects open-enrollment charter schools to a host of statutes that govern governmental entities outside the Education Code." *C2 Constr. I*, 342 S.W.3d at 78. Specifically, the Code provides that open-enrollment charter schools are considered to be "governmental bodies" for purposes of the open meetings and public information laws. TEX. EDUC. CODE ANN. § 12.1051. They are considered to be "a local government" under laws relating to local government records. *Id.* § 12.052. And "Section 12.1053 confers 'governmental entity' status, 'political subdivision' status, and 'local government' status on open-enrollment charter schools for purposes of myriad public purchasing and contracting laws. . . ." *C2 Constr. I*, 342 S.W.3d at 77 (citing TEX. EDUC. CODE ANN. § 12.1053 (Vernon

26

Supp. 2014)); *see also* TEX. EDUC. CODE ANN. §§ 12.1054, 12.1055 (providing for applicability of law relating to conflict of interest and nepotism laws to open-enrollment charter schools, their governing bodies, members, and officers).

Here, the Whistleblower Protection Act contains a "clear and unambiguous expression of the Legislature's waiver of immunity," as required to waive governmental immunity. *See Taylor*, 106 S.W.3d at 696; *see also* TEX. GOV'T CODE ANN. § 554.0035 (providing that public employee "may sue the employing state or local governmental entity" and that "[s]overeign immunity is waived and abolished to the extent of liability for the relief allowed" under Act). Thus, there is no question that the Legislature intended to waive immunity from suit for some claims under the Whistleblower Protection Act. There is only the question of whether the scope of affected governmental entities includes open-enrollment charter schools.

Neighborhood Centers encourages us to consider the text of the Whistleblower Protection Act's definition of "local governmental entity" in isolation to reach the conclusion that an open-enrollment charter school does not fit squarely within the definition. However, as we have already stated, the Education Code treats open-enrollment charter schools much like a political subdivision of the state in numerous respects, and it specifies that such schools are "subject to federal and state laws and rules governing public schools." *See* TEX. EDUC. CODE

ANN. § 12.103(a); *C2 Constr. I*, 342 S.W.3d at 78 (citing TEX. EDUC. CODE ANN. §§ 12.104–12.106). Employees of public school districts can bring whistleblower claims against their employers because the Legislature waived the schools' governmental immunity to permit that. *See* TEX. GOV'T CODE ANN. § 554.0035 (providing express waiver of immunity from suit for "public employee" suing "the employing state or local governmental entity"); *id.* § 554.001(2)(C) (defining "local governmental entity" as "including a . . . public school district"). To hold otherwise with respect to claims against an open-enrollment charter school would exempt it from the state whistleblower laws governing public schools, contrary to the express command of the Education Code that open-enrollment charter schools are "part of the public school system of this state" and are "subject to federal and state laws and rules governing public schools." *See* TEX. EDUC. CODE ANN. §§ 12.103, 12.105.

We hold that the Legislature has waived governmental immunity for the Whistleblower Protection Act claim asserted here by Walker against Neighborhood Centers. *See Taylor*, 106 S.W.3d at 697 (holding that statute waiving immunity need not be model of "perfect clarity" but must do so beyond doubt). Accordingly, the trial court properly denied Neighborhood Centers' plea to the jurisdiction on this issue.

We overrule Neighborhood Centers' sole issue on appeal.

28

**Conclusion**

We affirm the order of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.