Opinion issued August 13, 2015



In The

# Court of Appeals

For The

## First District of Texas

—————————————

### NO. 01-14-00596-CV

—————————————

**SATTERFIELD & PONTIKES CONSTRUCTION, INC., Appellant**

**V.**

**TEXAS SOUTHERN UNIVERSITY, JIM MCSHAN, AND GREG WILLIAMS, Appellees**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-12277**

---

## O P I N I O N

Appellant, Satterfield & Pontikes Construction, Inc. ("S&P"), sued appellees, Texas Southern University ("TSU"), Jim McShan, and Greg Williams, for alleged inconsistencies in the administration of a competitive bidding process. The trial court granted TSU's plea to the jurisdiction and dismissed all of S&P's

claims against TSU, McShan, and Williams. In two issues, S&P argues that the trial court erred (1) in granting TSU's plea to the jurisdiction on immunity grounds and (2) in dismissing its claims against McShan and Williams in their official capacities.

We affirm.

### Background

In January 2014, TSU solicited bids for the construction of a student housing facility by issuing a Request for Competitive Sealed Proposals pursuant to Texas Education Code section 51.783. Five companies, including S&P and Pepper-Lawson Horizon International Group ("Pepper-Lawson") provided sealed bids. After engaging in post-proposal discussions with Pepper-Lawson, TSU accepted Pepper-Lawson's bid and executed a construction contract with that firm.

S&P sent a protest letter to TSU complaining of deficiencies in TSU's administration of the bidding process, and it attempted to obtain documents related to the bidding process from TSU. However, TSU proceeded with construction using Pepper-Lawson as its contractor.

On March 7, 2014, S&P filed suit against TSU, Jim McShan, who is TSU's Vice President of Finance and CFO, and Greg Williams, who is TSU's Executive Director of Procurement Services. S&P alleged that TSU, McShan, and Williams, acting in their official capacities, violated various sections of the Government

Code and Education Code governing the solicitation and acceptance of competitive bids for construction projects. S&P asked the trial court to enter a declaratory judgment declaring that the contract between TSU and Pepper-Lawson was void and to order TSU to award the project to S&P. It also sought a temporary and permanent injunction preventing TSU from proceeding with construction until the project could be properly bid and awarded.

The trial court conducted hearings on S&P's application for a temporary injunction, but the court did not grant a temporary injunction, and work on the construction project proceeded.

TSU subsequently filed an amended answer, asserting sovereign immunity as an affirmative defense and alleging that S&P lacked standing to pursue its claims. No amended answer was filed for McShan or Williams. TSU then filed a plea to the jurisdiction, asserting that S&P's claims were barred by sovereign immunity, that S&P lacked standing to bring them, and that S&P failed to state a cause of action. McShan and Williams did not join TSU's plea to the jurisdiction.

S&P responded to the plea to the jurisdiction, arguing that TSU's sovereign immunity was waived by Education Code sections 51.783(f) and 51.778(a) and that it had standing to pursue its claims.

The trial court held a hearing and granted TSU's plea to the jurisdiction, hodling that Education Code sections 51.783(f) and 51.778(a) do not constitute a

3

waiver of sovereign immunity. The trial court order dismissed all claims against all parties. This appeal followed.

## TSU's Plea to the Jurisdiction

In its first issue, S&P argues that the trial court erred in granting TSU's plea to the jurisdiction. In this regard, it makes three arguments. First, S&P argues that TSU "did not meet its burden to prove that sovereign immunity bars S&P's claims." It asserts that TSU, as the defendant, "carries the initial burden to meet the summary-judgment proof standard for its assertion that the trial court lacks jurisdiction." Second, S&P argues that TSU never established that governmental immunity applies to this case because S&P is seeking to void a contract between a state entity and a third party, rather than seeking to uphold a contract between itself and a state entity, and it contends that governmental entities are not immune to suits, like its own, that seek to void a contract, because such suits do not seek to control state action. Third, S&P argues that Education Code sections 51.778 and 51.783 waived TSU's governmental immunity. These arguments, however, are not supported by the law governing the assertion of governmental immunity.

### A.     Standard of Review

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear the case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject-matter jurisdiction is essential to the authority of a court to

4

decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Id.* at 446; *see also Weir Bros., Inc. v. Longview Econ. Dev. Corp.*, 373 S.W.3d 841, 847 (Tex. App.—Dallas 2012, no pet.) ("[The plaintiff] had the burden to plead facts that affirmatively demonstrate a waiver of governmental immunity and that the court has subject matter jurisdiction.").

We review a trial court's ruling on a plea to the jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In reviewing the ruling, an appellate court must determine whether facts have been alleged that affirmatively demonstrate jurisdiction in the trial court. *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008).

When reviewing a trial court's ruling on a jurisdictional plea, "we first look to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiffs and looking to the pleader's intent," and "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *City of Waco v. Kirwan*, 298 S.W.3d 618, 621–22 (Tex. 2009). We do not adjudicate the substance of the case but instead determine whether a court has the power to reach the merits of the claim. *Bland Indep. Sch.*

*Dist.*, 34 S.W.3d at 554; *Bd. of Trs. of Galveston Wharves v. O'Rourke*, 405 S.W.3d 228, 233 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

If the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without allowing the plaintiff an opportunity to amend its pleadings. *Miranda*, 133 S.W.3d at 227. If the relevant evidence is undisputed or fails to raise a fact issue as to jurisdiction, the trial court rules on the plea as a matter of law. *Id.* at 228.

## B.    Burden of Proof

As a preliminary matter, S&P argues that TSU had the burden of proof in showing that S&P's claims should be dismissed. It is well-established, however, that a court's determination of whether it has subject-matter jurisdiction begins with the pleadings, and the pleader has the initial burden of alleging facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226; *Tex. Logos, L.P. v. Tex. Dep't of Transp.*, 241 S.W.3d 105, 110 (Tex. App.—Austin 2007, no pet.). Here, S&P sued TSU, which is undisputedly a governmental entity. As such, TSU is entitled to immunity from suit unless S&P, as the plaintiff, has established either that sovereign immunity does not apply or that the State consented to suit. *See Tex. Natural Res. Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

**C.       Dismissal of S&P's Suit on Immunity Grounds**

First, S&P argues that the trial court erred in granting TSU's plea to the jurisdiction on immunity grounds.  It argues that TSU is not immune from its suit because its suit is not a "suit against the State" that attempts to control a state action and that, therefore, would implicate immunity principles.  Second, it argues that TSU consented to suit.  Third, it argues that even if failed to establish a waiver of TSU's immunity from suit, it should be allowed an opportunity amend its pleadings.

**1.       *Applicability of Immunity to "Suit Against the State"***

S&P argues that governmental immunity does not apply to its claims. "Governmental immunity is comprised of immunity from both suit and liability." *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011).  "Immunity from liability protects entities from judgments while immunity from suit deprives courts of jurisdiction over suits against entities unless the Legislature has expressly consented." *Id.*  Sovereign immunity and its counterpart for political subdivisions of the State, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages.  *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Harris Cnty. v. Luna-Prudencio*, 294 S.W.3d 690, 696 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

7

In addition to barring suits for "money damages," governmental immunity protects state entities against suits to "control state action." *IT-Davy*, 74 S.W.3d at 855–56; *O'Rourke*, 405 S.W.3d at 234 (holding that State is immune from suits to "control state action," i.e. when trial court's judgment would "effectively direct or control a government official in the exercise of his or her statutory authority"); *Tex. Logos, L.P.*, 241 S.W.3d at 118; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.056 (Vernon 2011) (providing that waiver of immunity in Texas Tort Claims Act does not apply to governmental unit's exercise of discretionary powers). Claims, including those for declaratory judgment, that seek "to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State" that attempt to "control[] state action," and from which the state is therefore protected from liability by sovereign immunity. *IT-Davy*, 74 S.W.3d at 855–56 (characterizing such claims as form of "controlling state action"); *Tex. Logos, L.P.*, 241 S.W.3d at 119 (quoting *IT-Davy*, 74 S.W.3d at 855-556).

Texas courts have also "regarded these immunity principles as . . . barring suits to cancel or nullify a contract made for the benefit of the state." *Tex. Logos, L.P.*, 241 S.W.3d at 120 (citing *W.D. Haden Co. v. Dodgen*, 308 S.W.2d 838, 840–41 (Tex. 1958)); *see also Mustang Special Util. Dist. v. Providence Vill.*, 392 S.W.3d 311, 317 (Tex. App.—Fort Worth 2012, pet. denied) (rejecting argument

8

that suit to invalidate contract is not barred by immunity); *Tex. S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 908–09 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (holding that companies' request for declaratory judgment on validity of contract, including party's claim seeking declaration that contract was "void and unenforceable," was barred by immunity principles). Finally, the Texas Supreme Court has repeatedly held that, absent a legislative waiver, governmental immunity bars suits seeking declaratory and injunctive relief against governmental entities, as S&P does here. *See Tex. Dept. of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009); *Tex. Logos, L.P.*, 241 S.W.3d at 115–16, 121.

S&P argues, however, that its suit to invalidate the contract between TSU and Pepper-Lawson does not attempt "to control state action" but instead seeks to invalidate a contract, and, thus, TSU is not immune from suit. *See IT-Davy*, 74 S.W.3d at 855–56.

S&P relies on *Texas Highway Commission v. Texas Association of Steel Importers* to support its argument. *See* 372 S.W.2d 525 (Tex. 1963). In that case, the Association of Steel Importers sought to invalidate an administrative order of the Texas Highway Commission that prohibited the award of contracts to entities that used foreign-sourced materials. 372 S.W.2d at 526, 530. The court held that the proceeding seeking to nullify the administrative order "cannot be classed as a

9

suit against the state" because it was a proceeding to declare an agency order void as exceeding the agency's statutory authority, not a suit complaining about a state entity's exercise of its statutory authority to contract. *See id.* at 530. Here, the opposite is the case. S&P has expressly brought suit against a state entity—TSU— seeking to declare a state-awarded contract invalid, to enjoin its enforcement after the fact, and to obtain damages from the state entity that awarded the contract to another bidder in the exercise of authority expressly granted the state entity by the Texas Education Code.

In *Texas Logos*, the Austin Court of Appeals analyzed *Steel Importers* in circumstances similar to those of the present case. In *Texas Logos*, as here, a company (Texas Logos) sued a governmental entity (the Texas Department of Transportation, or "TxDOT") seeking a declaratory judgment that the entity had exceeded its statutory authority by violating provisions regarding procurement of a contract with a third party (Media Choice). 241 S.W.3d at 109, 111–13. As S&P does here, Texas Logos equated its claims with the claim in *Steel Importers* and argued that the precedent in *Steel Importers* compelled a conclusion that Texas Logos' claim against TxDOT was not a "suit against the state" that implicated principles of governmental immunity because it did not seek to control state action but instead sought to void a contract. *Id.* at 116, 120.

The court in *Texas Logos* distinguished *Steel Importers* and held that Texas Logos' claim against TxDOT did seek to control state action on a contract and therefore did implicate principles of governmental immunity. It cited the supreme court's precedents in *W.D. Haden Co.* and *IT-Davy* regarding suits that seek to control state action and held that "[s]uits to nullify a contract made for the benefit of the state would likewise implicate sovereign immunity principles as currently articulated by the Texas Supreme Court." *Id.* at 120. The court added, "Even if sovereign immunity would not otherwise have barred Texas Logos's declaratory claims if it had alleged ongoing statutory violations in the logo sign procurement and sought to make TxDOT comply with these statutes, Texas Logos alleges only *past* statutory violations, the 'only plausible remedy' for which is the invalidation of the contract. Such a remedy . . . implicates sovereign immunity and bars Texas Logos's UDJA claims challenging the logo sign contract and procurement." *Tex. Logos, L.P.*, 241 S.W.3d at 122–23.

We conclude, as did the court in *Texas Logos*, that the reasoning from *Steel Importers* is not applicable here. S&P does not seek to declare an agency order void as unauthorized by law. It seeks a declaratory judgment voiding a specific contract between TSU, a governmental entity, and a third party, Pepper-Lawson, and it seeks a court order enjoining further work on the now-completed project and awarding the project to itself. Thus, S&P's suit ultimately seeks to "nullify a

11

contract made for the benefit of the state" and "to compel non-performance of once-binding contractual obligations," implicating governmental immunity principles. *See W.D. Haden*, 308 S.W.2d at 841; *Providence Vill.*, 392 S.W.3d at 317; *see also Tex. Logos, L.P.*, 241 S.W.3d at 119–20 (relying on *W.D. Haden* and *IT-Davy* in concluding that "[s]uits to nullify a contract made for the benefit of the state . . . implicate sovereign immunity principles as currently articulated by the Texas Supreme Court").

Moreover, as in *Texas Logos*, S&P has alleged only *past* violations of the competitive bidding provisions in the Education Code on a now-completed contract, not the ongoing violations at issue in *Steel Importers* that would permit a remedy under the statute. *See* 372 S.W.2d at 526, 530; *Tex. Logos, L.P.*, 241 S.W.3d at 122–23. Thus, the only plausible remedy would be invalidation of the contract between TSU and Pepper-Lawson—a remedy implicating principles of sovereign immunity. *See Tex. Logos, L.P.*, 241 S.W.3d at 122–23.

We conclude that, contrary to S&P's argument, its suit against TSU does implicate principles of governmental immunity, and, therefore, as the plaintiff, it was required to establish the state's consent to its suit.

### 2. Consent to Suit

Regardless of general principles of governmental immunity, "a party may establish consent to sue by referencing a legislative statute or a resolution granting

express legislative permission" to sue a governmental entity. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). Legislative consent to sue the State must be expressed in "clear and unambiguous language." *Id.*

S&P argues that Education Code sections 51.778(a) and 51.783(f) waived TSU's governmental immunity, thereby establishing consent to suit.

Education Code section 51.778 addresses competitive bidding on contracts generally. It provides:

> Except as otherwise provided by this subchapter, all contracts for the construction or erection of permanent improvements at an institution are void unless made after advertising for bids for the contracts in a manner prescribed by the institution's board, receiving sealed competitive bids, and awarding of the contract to the lowest responsible bidder by the board.

TEX. EDUC. CODE ANN. § 51.778(a) (Vernon 2012). Section 51.778(b) provides that if a contract is awarded to someone other than the lowest bidder, the lowest bidder "shall be notified of the recommendation for award and shall be allowed an opportunity before the award to present evidence" of its responsibility. *Id.* § 51.778(b).

Education Code section 51.783—the specific provision under which TSU solicited bids for the construction here—provides the process for selecting contractors for construction services through competitive sealed proposals. *Id.* § 51.783 (Vernon 2012). Section 51.783 sets out the method for preparing a

13

request for competitive sealed proposals, the documents required, and notice requirements. *Id.*

Section 51.783(f) provides:

> The board [responsible for administering the selection process] shall receive, publicly open, and read aloud the names of the offerors and, if any are required to be stated, all prices stated in each proposal. Within 45 days after the date of opening the proposals the board shall evaluate and rank each proposal submitted in relation to the published selection criteria.

*Id.* § 51.783(f). This section states that the school's board "shall select the offeror that offers the best value for the institution based on the published selection criteria and on its ranking evaluation." *Id.* § 51.783(g). It allows the board to negotiate with the selected contractor and to "discuss . . . options for a scope or time modification and any price change associated with the modification." *Id.* Section 51.783 further provides that "the board is not restricted to considering price alone but may consider any other factor stated in the selection criteria" in determining "best value" for the institution. *Id.* § 51.783(g)–(h).

TSU argues that section 51.778, the more general provision, does not apply here because its bidding was completed pursuant to section 51.783. However, this argument is immaterial as neither section 51.778 nor section 51.783 contains an express waiver of governmental immunity from a suit to declare a governmental entity's contract void in "clear and unambiguous language," and S&P points to no such language. *See Little-Tex Insulation Co.*, 39 S.W.3d at 594. Nor does S&P

refer to any other statute that serves to waive TSU's governmental immunity in this case. Thus, S&P has not borne its burden of establishing TSU's consent to suit on S&P's claim. *See id.*

### 3. *Opportunity to Amend Pleadings*

Finally, S&P argues that, even if we conclude that it did not sufficiently establish a waiver of TSU's immunity from suit, it should be allowed an opportunity to amend its pleadings. We disagree.

S&P was never awarded a contract that TSU failed to perform; rather, it seeks to invalidate a third-party's contract with TSU based on TSU's alleged failure in the past to conduct the bidding process on the contract properly and to award S&P the construction contract in place of Pepper-Lawson in the manner S&P argues was required by the Education Code.

A governmental entity's exercise of statutory authority, such as the authority to take bids and award contracts, is an exercise of the entity's discretionary powers. *See O'Rourke*, 405 S.W.3d at 234–35 (holding that discretionary act is one that requires exercise of "personal deliberation, decision and judgment"); *Tex. Logos, L.P.*, 241 S.W.3d at 118 (holding that state entity is immune from suit deriving from its exercise of statutory authority to award sign contracts). As discussed above, the legislature has not waived immunity for suits that seek to control state action by dictating the exercise of discretionary powers, such as that at issue here.

15

*See, e.g.*, TEX. CIV. PRAC. & REM. CODE ANN. § 101.056 (Vernon 2011) (providing that waiver of immunity in Texas Tort Claims Act does not apply to governmental unit's exercise of discretionary powers); *IT-Davy*, 74 S.W.3d at 855–56 (holding that sovereign immunity protects State from suits to "control state action"); *O'Rourke*, 405 S.W.3d at 234 (holding that State is immune from suits to "control state action," i.e. when trial court's judgment would "effectively direct or control a government official in the exercise of his or her statutory authority"). Nor has S&P been able to point to any express waiver of immunity from such a suit.

Moreover, even if S&P could have sued TSU on the contract under a theory it did not plead, S&P's suit for injunctive and declaratory relief seeking to halt construction under the contract between TSU and Pepper-Lawson and to require TSU to repeat the bidding process in compliance with the competitive bidding procedures of the Education and Government Codes is long since moot. Construction had already begun under TSU's contract with Pepper-Lawson long before the case reached this Court—and indeed, under the terms of the contract was to have been completed by the fall of 2014. The trial court denied S&P's motion for injunctive relief halting performance of the construction contract, and S&P did not appeal that decision or otherwise pursue its claim for injunctive relief. Accordingly, any claim by S&P seeking to require TSU to re-bid the project is now moot. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (holding that

controversy becomes moot when "the issues presented are no longer 'live'" and party loses standing to maintain its claims).

Thus, the pleadings here affirmatively negate the existence of jurisdiction. *See Miranda*, 133 S.W.3d at 238 (holding that plea may be granted without allowing plaintiff opportunity to amend his pleadings if pleadings affirmatively negate existence of jurisdiction). We conclude that the trial court did not err in granting TSU's plea to the jurisdiction. We overrule S&P's first issue.

**Dismissal of S&P's Claims against McShan and Williams**

In its second issue, S&P argues that the trial court erred in dismissing its claims against McShan and Williams.

Generally, public officials sued in their official capacity—as McShan and Williams were here—are protected by the same sovereign or governmental immunity as the governmental unit they represent. *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843–44 (Tex. 2007). We have already held that the trial court correctly determined that it lacked jurisdiction to consider the merits of S&P's claims against TSU on governmental immunity grounds. Thus, the trial court correctly determined that it lacked jurisdiction over McShan and Williams, who were sued in their official capacities. *See id.* It does not matter that neither McShan nor Williams joined TSU's plea to the jurisdiction nor otherwise moved to dismiss the claims against them, as the trial court is obliged to consider its

17

jurisdiction over claims even if not raised by the parties themselves. *See In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010) (holding that not only may issue of subject-matter jurisdiction be raised for first time on appeal by parties or court, but also "a court is obliged to ascertain that subject matter jurisdiction exists regardless of whether the parties questioned it").

S&P argues, however, that McShan and Williams's acts were not merely the acts of public officials but were ultra vires acts that are an exception to governmental immunity. Under the ultra vires exception, immunity "does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions." *Heinrich*, 284 S.W.3d at 368–69. For a suit to fall within the ultra vires exception to governmental immunity, however, the suit "must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372; *O'Rourke*, 405 S.W.3d at 234.

S&P cannot establish the ultra vires exception here. S&P cannot demonstrate that McShan and Williams acted without legal authority or failed to perform a purely ministerial act, rather than discretionary acts, as required for the ultra vires exception to apply. *See Heinrich*, 284 S.W.3d at 372; *O'Rourke*, 405 S.W.3d at 234. S&P does not challenge TSU's authority to solicit competitive bids

18

or to enter into construction contracts, nor does it allege that McShan and Williams were not authorized to conduct the biding process on behalf of TSU. Moreover, as the language of Education Code section 51.783 indicates, the determination of which bid to accept was not purely ministerial, but involved the exercise of discretion. *See* TEX. EDUC. CODE ANN. § 51.783(g)–(h) (providing that board must determine which bid represents "the best value for the institution based on the published selection criteria and on [the board's] ranking evaluation" and that "the board is not restricted to considering price alone but may consider any other factor stated in the selection criteria" in making its determination); *O'Rourke*, 405 S.W.3d at 234 ("A discretionary act is one that requires the exercise of personal deliberation, decision and judgment."); *Junemann v. Harris Cnty.*, 84 S.W.3d 689, 693 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("Actions that involve personal deliberation, decision, and judgment are discretionary; actions that require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial.").

S&P argues that McShan and Williams did not have discretion to violate statutory provisions in implementing the bidding process, but this argument does not alter the fact that S&P is complaining about McShan's and Williams's exercise of their statutory discretion, for which they have immunity. *See Junemann*, 84 S.W.3d at 693. Moreover, even if their actions could somehow be characterized as

ministerial and ultra vires, S&P is seeking retrospective relief in that it is asking for a declaratory judgment voiding the construction contract between TSU and Pepper-Lawson and awarding the construction contract to S&P itself. Any such retrospective relief is moot because of the advanced state of the construction on the project and is likewise barred by immunity. *See O'Rourke*, 405 S.W.3d at 236 n.2 (holding that immunity applies to suits for injunctive relief "seeking imposition of an affirmative duty based on a past alleged actionable wrong").

These deficiencies in S&P's pleadings cannot be cured by re-pleading. *See Miranda*, 133 S.W.3d at 227. Accordingly, we conclude that the trial court lacked subject-matter jurisdiction and did not err in dismissing S&P's claims against McShan and Williams. *See O'Rourke*, 405 S.W.3d at 236 n.2 (holding that immunity applies to suits for injunctive relief "seeking imposition of an affirmative duty based on a past alleged actionable wrong"); *see also Heinrich*, 283 S.W.3d at 372 (holding that immunity bars suit against state official for performance of discretionary act). We overrule S&P's second issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Brown.

20