# Court of Appeals
## Tenth Appellate District of Texas

---

10-22-00354-CV

---

Michelle Lee Mahfouz and Shannon Huggins,
Appellants

v.

Dorothy J. Oliver, Burleson County Elections Administrator, Keith
Schroeder, Burleson County Judge, Dwayne Faust, Precinct 1
Commissioner, Vincent Svec, Jr., Precinct 2 Commissioner, David
Hildebrand, Precinct 3 Commissioner, and Carol Hill, Precinct 4
Commissioner,
Appellees

---

On appeal from the
21st District Court of Burleson County, Texas
Judge Carson T. Campbell Jr., presiding
Trial Court Cause No. 30740

---

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

Michelle Lee Mahfouz and Shannon Huggins appeal a final order of the
trial court that dismissed with prejudice claims against Appellees that alleged
Burleson County's electronic voting system violated Mahfouz's and Huggins's
constitutional rights.

## A. Background

Mahfouz and Huggins, both pro se, filed suit against several Burleson County officials, including the Elections Administrator, County Judge, and all four County Commissioners. In their lawsuit, Mahfouz and Huggins requested declaratory and injunctive relief that sought to enjoin Burleson County's use of electronic voting systems and sought to prohibit the destruction of election records from the 2020, 2021, and 2022 elections.

Mahfouz and Huggins alleged that the electronic voting systems used in Burleson County were not lawfully certified, in violation of state and federal constitutional provisions, state and federal election laws, and state and federal administrative rules. They claim this violation impeded their lawful vote and caused them to cast illegal ballots. Mahfouz and Huggins also raised constitutional questions regarding the reliability of the electronic voting system, alleging that these systems are vulnerable to manipulation, hacking, and tampering, which could dilute the effectiveness of their votes.

Specifically, Mahfouz and Huggins alleged that the Appellees violated the law by approving and using uncertified voting systems, which they claim led to a deprivation of their civil rights. To support their claims, Mahfouz and Huggins attached three affidavits from themselves and a third party. They

also included an appendix of over 500 pages to support the substantive merits of their claims.

Ultimately, Mahfouz and Huggins requested that the trial court declare the use of electronic voting systems void and order implementation of a hand-marked paper ballot system.

In response to the lawsuit, the Appellees filed a plea to the jurisdiction asserting that status solely as a voter is insufficient to establish standing because any injury is not particularized but rather applies equally across the public at large. Additionally, the Appellees argued that the injury claimed by Mahfouz and Huggins was hypothetical and speculative rather than actual and imminent. They alleged that Mahfouz and Huggins failed to plead facts that actual harm occurred to either of them and that they have proffered only fear of potential harm. The Appellees also argued that while a voter may have standing to bring an equal protection claim, Mahfouz and Huggins did not allege facts to establish such a claim.

Mahfouz and Huggins filed a response to the Appellees' plea to the jurisdiction and stated that their "[p]etition alleges a concrete and particularized injury—nullification of the Petitioners fundamental rights as voters to vote and have their vote counted with out [sic] dilution or debasement by other fictitious or manipulated votes from illegally certified voting

machines." Mahfouz and Huggins asserted that they had established concrete, particularized, individualized injury. They argued that Texas law and our state constitution grants the trial court jurisdiction over their case. Mahfouz and Huggins also stated that "[t]he evidence clearly laid out by Petitioners shows that the Respondents failed to take necessary actions to protect Petitioners' right to vote and continue to do so to this day, causing ongoing individual harm to Petitioners" and that "Respondents' failures prove individual injury and harm to Petitioners." The evidence they referred to appears to be their allegations that the Burleson County election system violated the Texas Election Code, and their extensive documentation attached to the amended petition as proof that the electronic voting machines were noncompliant with federal law, compromised, and substandard.

After a hearing on the plea to the jurisdiction, the trial court granted the plea, entered an order dismissing the case with prejudice, and made findings of fact and conclusions of law.

## B. Issue One

In Mahfouz's and Huggins's first issue, they complain that their lawsuit was brought as an emergency petition and that the district clerk and trial court "did not treat the petition as such under sections 23.101, 23.301, and 23.302 of the Government Code."

The record before us does not reflect that Mahfouz or Huggins made a complaint in the trial court on the grounds they now complain of on appeal. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint and that the trial court either ruled on the complaint or refused to rule and the party objected to that refusal. TEX. R. APP. P. 33.1. If a party fails to do this, error is not preserved, and the complaint is waived. *Fraud-Tech, Inc. v. Choicepoint, Inc.*, 102 S.W.3d 366, 379 (Tex. App.—Fort Worth 2003, pet. denied). Pro se litigants are not exempt from our error preservation rules. *Harrison v. Reiner*, 607 S.W.3d 450, 464 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

We overrule Mahfouz's and Huggins's first issue.

### C. Issue Two

We construe Mahfouz's and Huggins's second issue, which contains several subparts[1], as a complaint that the trial court erred in granting Appellees' plea to the jurisdiction because as aggrieved voters, they have standing.

### 1. Standard of Review

Subject-matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993). Whether a court has subject-matter jurisdiction is a question of law, and without subject-matter jurisdiction, a court cannot render a valid judgment. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). A party may challenge a trial court's subject-matter jurisdiction by filing a plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "We do not adjudicate the substance of the case but instead determine whether a court has the power to reach the merits of the claim.*" Satterfield & Pontikes Constr., Inc. v. Tex. S. Univ.*, 472 S.W.3d 426, 430 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). "Our ultimate inquiry is whether the particular facts presented, as determined by . . . review of the pleadings and any evidence, affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction." *Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.). We construe the pleadings liberally in favor of the plaintiff to determine whether the facts alleged affirmatively demonstrate the court's jurisdiction to hear the matter. *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018). When deciding a plea to the jurisdiction, the trial court must look solely to the allegations in the petition, accept the allegations in the

petition as true, and construe them in favor of the pleader. *See Tex. Parks & Wildlife Dep't v. Garrett Place, Inc.*, 972 S.W.2d 140, 143 (Tex. App.—Dallas 1998, no pet.). Where a plea to the jurisdiction challenges the existence of jurisdictional facts, the court can consider evidence as necessary to resolve any dispute over those facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). Dismissing a cause of action for lack of subject matter jurisdiction is proper only when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court. *Lovato v. Austin Nursing Ctr., Inc.*, 113 S.W.3d 45, 51 (Tex. App.—Austin 2003), aff'd, 171 S.W.3d 845 (Tex. 2005). The plaintiff bears the burden of alleging facts affirmatively showing that the trial court has subject-matter jurisdiction. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). Standing is a constitutional prerequisite to maintaining suit. *Texas Dep't of Transp. V. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004). We review *de novo* a trial court's order granting or denying a plea to the jurisdiction based on standing. *Farmers Tex. Cnty. Mut. Ins. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

2. Standing

"A challenge to a party's standing is an attack on the party's ability under the United States and Texas Constitutions to assert a claim." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 700 (Tex. 2021). "Standing is

a constitutional prerequisite to maintaining suit in federal or state court."

*Sneed v. Webre*, 465 S.W.3d 169, 179–80 (Tex. 2015) (quoting *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex.2001)). "A court has no jurisdiction over a claim made by a plaintiff without standing to assert it." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008). To establish standing, "a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Sneed v. Webre*, 465 S.W.3d at 180 (quoting *Williams v. Lara*, 52 S.W.3d at 178-179); *see Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). A plaintiff must plead facts demonstrating that he or she, not a third party or the public at large, suffered the injury. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155 (Tex. 2012).

> For a party to have standing to raise a claim, (1) the party must have an injury in fact, i.e., a concrete and particularized injury that is actual or imminent and not hypothetical; (2) the injury must be fairly traceable to the action complained of; and (3) the injury must be likely to be redressed by the requested relief.

*Harvey v. Henry*, No. 14-23-00280-CV, 2024 WL 3875931, at *1 (Tex. App.—Houston [14th Dist.] Aug. 20, 2024, no pet.) (mem. op.) (citing *Heckman v. Williamson Cnty.*, 369 S.W.3d at 155.

3. Discussion

In our analysis of whether Mahfouz and/or Huggins have standing, we must first determine if they have alleged that they suffered a concrete and particularized injury that is actual or imminent. Their amended petition alleges "injury" a number of times but fails to provide underlying facts to support the alleged conclusion that Mahfouz and Huggins were each in fact injured, (i.e., facts establishing that their vote was not counted, that their vote was diluted or impeded, that their vote was illegal, that they were treated differently from other voters and suffered disparate treatment). They fail to allege some specific factual injury distinct from that sustained by the public at large. *See Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001). Both Mahfouz and Huggins must each plead facts demonstrating that they each suffered an injury, rather than a third party or the public at large. *See Heckman*, 369 S.W.3d at 155. Their allegations are more of a generalized grievance challenging the lawfulness of government acts which Mahfouz and Huggins do not have standing to assert. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011). This is because citizens, voters, and taxpayers generally lack standing to bring a lawsuit challenging the lawfulness of governmental acts or to insist the government and its officials adhere to the requirements of law. *See id*. Here, the conclusory pleadings do not provide sufficient jurisdictional

facts to determine if the trial court had jurisdiction. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010).

We will now turn to Mahfouz's and Huggins's affidavits attached to the amended petition. Mahfouz's affidavit included the following:

> Affiant supports in writing a cause that demonstrates Respondents' actions as outlined above in this complaint/petition violate several state and federal laws, which are against The People of Texas, and also, against the peace and dignity of the State.
>
> 1. I contacted the elections office on February 25, 2022 requesting information regarding the voting machines used in the 2020 Presidential General election. The majority of responses to my questions were, "This office does not have any records in its care, custody or control responsive to this request. Equipment was purchased in 2005 and any document older than 2019 have been destroyed per TEC Sec, 66.058." I am aware that new systems have been purchased, however, they are as insecure as previously used systems and do not solve the issues documented in this filing. In addition, there remain serious questions regarding the security and legality of the 2020 elections.
>
> 2. At this point, *I do not feel confident* that my vote was recorded and counted correctly and that because the Hart machines were connected to the internet, *I feel* my vote may have been diluted.
>
> 3. Burleson County's continued use of electronic voting systems in future elections, including the 2022 election, will deprive me of my constitutional rights.
>
> 4. In freedom of information act requests, it has been discovered that:
>> a. Burleson County has been unable to provide any contracts for election systems used in the November 3, 2020 General Presidential election.

b. Burleson County has indicated that they do not have the HVS 6.2.1 equipment/contracts/certifications for equipment used in the November 3, 2020 General Presidential election.

c. Burleson County has been unable to provide certifications for equipment used in the November 3, 2020 General Presidential election.

d. In addition, the HVS 6.2.1 system did not have the ability to do sequential ballot numbering.

e. Burleson County has been unable to provide the original authorization letter from the Secretary of State granting conditional approval to Burleson County to use the 6.2.1.

f. Burleson County has indicated that though they are to retain backups of the Tally program from the county election server, which has election databases and presumably must be obtained [sic] for 22 months, they do not have this information. (For the November 3, 2020 General Presidential Election.

g. Burleson County has indicated that they do not have the individual cast vote records that were used for reporting results in the November 3, 2020 General Presidential Election. If this information is correct, how can it be proven that my vote counted in any elections held in Burleson County?

5. *I do not feel confident* that my vote was recorded and counted correctly and *I believe it is possible* that my vote was diluted. Burleson County's continued use of electronic voting systems in future elections, including the 2022 midterm election, will deprive me of my constitutional rights according to Texas Election Law.

I declare under penalty of perjury that the forgoing is true and correct to the *best of my knowledge*. (emphasis added)

Huggins's affidavit included the following:

Affiant supports in writing a cause that demonstrates Plaintiffs actions and *injury* and continued *injury* as outlined above in this verified complaint/petition with injunction violate several state and federal laws, which are against The People of Texas, and also, against the peace and dignity of the State.

1. The electronic voting systems used throughout the United States have not been properly certified since, at least 2017. This includes the Hart machines used in BURLESON county during the 2020 General Presidential Election, the 2021 constitutional election, 2022 primary election AND the Hart Verity 2.5 machines that are to be used in the November 2022 election. The Machines currently in use in BURLESON county were not legally certified as SLI Compliance was not in compliance during the period that testing was performed on the Verity 2.5 system. If those systems were uncertified, *we must assume* the election systems are compromised and/or substandard.

2. My tax dollars paid for an election machine that was not legally certified. MY commissioners and County judge approved the purchase, my county election administrator Made the purchase, they administered several fraudulent elections, and our votes were cast on a machine that was not legally certified. The Illegally Certified Hart Verity 2.5 Election Machines *represents an IMMEDIATE HARM to voters of BURLESON County*, and this injury will continue without the immediate injunctive relief this court can provide.

3. These officials are also using my taxpayer money to represent themselves in the defense of my case I brought against them.

4. This is taxation without representation as they do not hold their office legally.

5. the District court has primary jurisdiction over matters concerning the Commissioners court.

6. The presence of substandard equipment and devices separates voters into two groups: Those who have had their votes illegally

counted and those who have not. This represents unequal protection under Article 6 and Article 1 of the Texas constitution.

7. Without relief from this court, once again, I will be FORCED to vote on UNLAWFULLY CERTIFIED election machines on November 8, 2022.

I declare under penalty of perjury that the forgoing complaint with injunction has been reviewed and I personally know or *believe* that all allegations are true and correct to the best of my knowledge. (emphasis added)

Mahfouz's affidavit contains conclusory assertions based upon her belief and feelings. Huggins's affidavit contains conclusory assertions based upon her assumption and belief. Their conclusory allegations of injury are unsupported by specific factual allegations of actual concrete and particularized injury. Conclusory statements are not competent evidence in a plea to the jurisdiction proceeding. *See Wilson v. Dallas Indep. Sch. Dist.*, 376 S.W.3d 319, 326 (Tex. App.—Dallas 2012, no pet.).

Neither Mahfouz or Huggins have alleged facts establishing that the use of the Burleson County voting machines caused either of them a concrete and particularized injury that was actual or imminent. Mahfouz and Huggins raise only the possibility of conjectural or hypothetical injury. Mahfouz and Huggins assert their right to vote was interfered with when they were required to vote using a system, they contend is unreliable and subject to manipulation. Even when we accept their allegation as true, as we are required to, this alleged

injury would be shared by every registered voter in Burleson County and is not distinct from that of the general public. *See Sneed v. Webre*, 465 S.W.3d at 180.

Mahfouz and Huggins have not, as is required by law, pleaded or provided evidence of a concrete, particularized harm to justify their claims that they suffered an injury that is particular to them or distinct from other Burleson County voters, their allegations involve only generalized grievances about the lawfulness of government acts which they do not have standing to assert. *See Andrade v. NAACP of Austin*, 345 S.W.3d at 17–18.

We overrule their second issue. The trial court's order of dismissal with prejudice is affirmed.[2]

_____
MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: August 14, 2025

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Affirmed
CV06



2. Appellant filed a constitutional challenge to election statute.

*Constitutional Issues*:

    a. If the electronic voting systems are not lawfully certified in compliance with voting system standards, does it impede the Appellants' lawful vote in elections? TEX. CONST. art VI § 4, U.S. CONST. amend 15.

    b. If the electronic voting systems and their various devices are not lawfully certified, does it cause the Appellants to cast illegal ballots? 52 U.S.C. § 10307(a), Due Process Clause.

    c. Since Texas officials presented uncertified voting systems as certified, and we must assume uncertified systems are compromised or substandard, did they abridge the Appellants federally protected right to vote, as well as affronted TEX. PEN. CODE § 37.03, § 37.09, § 37.10, 18 U.S.C. § 245[.]

    d. Would it dilute the expressed intent and effectiveness of the Appellants' voice if the uncertified electronic voting systems and their various devices are vulnerable to hacking, tampering, and algorithmic preprogramming? TEX. CONST. art. VI § 4, Right to Vote Clause.

    e. If the electronic voting systems are unreliable mechanisms for accurately collecting, retaining, and communicating the expression of the Appellants' vote, is it acceptable to injure the Appellants' voice and will under the Constitutional premise of the consent of the governed.? Declaration of Independence, Guarantee Clause.

    f. Were Constitutionally protected free and fair elections negatively impacted by Texas officials' unconstitutional modification of election laws? TEX. ELEC. CODE § 276.019 and TEX. CONST. art. I § 28.

    g. If the acting representative servants were unlawfully elected as a result of unreliable, unlawful vote collection devices are they acting in their official capacity? TEX. CONST. art. I § 19 and § 29.

    h. Would they not, then, be impersonating public servants? TEX. PEN. CODE § 37.11.

    i. The "elected" officials within the Texas courts prevent a fair hearing of cases involving the election. Where can Appellants find an objective perspective without being denied redress of grievances? TEX. CONST. art. I § 3, § 13 § 27, and U.S. CONST. amend 1.

    j. What is the Constitutional remedy for the usurpation of the Appellants' role as the underlying governmental authority, and for forcing the Appellants to participate in their own servitude through fraudulent policies, systems, and measures? TEX. CONST. art. I § 29, U.S. CONST. amend 13 § 1 and U.S. CONST. amend. 10.

² In five recent cases, other Texas intermediate appellate courts have affirmed the trial court's dismissal of similar claims because individual voters lacked standing to bring claims that applied generally to voters at large. The Supreme Court of Texas has denied review of the intermediate court's decision in two of the cases when the decisions were challenged. *See Kuslich v. Bush*, No. 09-23-00030-CV, 2025 WL 271166, at 3–4 (Tex. App.—Beaumont Jan. 20, 2025, pet. denied) (mem. op.); *Harvey v. Henry*, No. 14-23-00280-CV, 2024 WL 3875931, at *4–5 (Tex. App.—Houston [14th Dist.], Aug. 20, 2024, no pet.) (mem. op.); *Jones v. Stinson*, No. 05-22-01098-CV, 2023 WL 8946172,

at \*4 (Tex. App.—Dallas Dec. 28, 2023, no pet.) (mem. op.); *Vieira v. Hudman*, No. 14-22-00678-CV, 2023 WL 5623481, at \*4 (Tex. App.—Houston [14th Dist.], Aug. 31, 2023, no pet.) (mem. op.); *Ramsey v. Miller*, No. 02-22-00412-CV, 2023 WL 3645468, at \*3–4 (Tex. App.—Fort Worth, May 25, 2023, pet. denied) (mem. op.).